GORDON SILVER
THOMAS H. FELL, ESQ.
Nevada Bar No. 3717
E-mail:  tfell@gordonsilver.com
GABRIELLE A. HAMM, ESQ.
Nevada Bar No. 11588
E-mail:  ghamm@gordonsilver.com
KIRK D. HOMEYER, ESQ.
Nevada Bar No. 12402
E-mail:  khomeyer@gordonsilver.com
3960 Howard Hughes Pkwy., 9th Floor
Las Vegas, Nevada 89169
Telephone (702) 796-5555
Facsimile (702) 369-2666
Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF NEVADA

| In re:<br><br>CAPABILITY RANCH, LLC,<br><br>Debtor. | Case No.: BK-S-12-21121-LED<br>Chapter 11<br><br>Confirmation Hearing:<br>Date:   July 30, 2013<br>Time:  10:00 a.m. |
|---|---|

## DEBTOR'S BRIEF IN SUPPORT OF APPROVAL OF ADEQUACY OF DISCLOSURE STATEMENT AND CONFIRMATION OF ITS PLAN OF REORGANIZATION

Capability Ranch, LLC ("Debtor"), debtor and debtor-in-possession, by and through its counsel, the law firm of Gordon Silver, hereby submits its brief in support of confirmation (the "Confirmation Brief") of the *Debtor's First Amended Plan of Reorganization* [ECF No. 94] (as amended by the *Amendment to Debtor's First Amended Plan of Reorganization* [ECF No. 104], the "Plan"),  filed by the Debtor on June 17, 2013 and June 19, 2013 in the above-referenced case.[1]

The Confirmation Brief is made and based on the *Declaration of  David E. Lipson In Support of Debtor's Brief In Support Of Confirmation of its Plan Of Reorganization* (the "Lipson Declaration") filed herewith, the memorandum of points and authorities provided herein, the

---

[1] Capitalized terms not otherwise defined herein shall have the same meanings as set forth in Debtor's Plan.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

pleadings, papers, or other records on file with the clerk of the above-captioned Court, judicial notice of which is hereby respectfully requested, and the argument of counsel and evidence presented at the time of the hearing in this matter.

# I.
# INTRODUCTION

1. On September 27, 2012 (the "Petition Date"), the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code. The Debtor has continued operating its business and managing its property as a debtor and debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner in this case, and no official committees have been appointed.

2. The Court has jurisdiction over this Chapter 11 plan confirmation hearing as a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). Venue of Debtor's Chapter 11 Case in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The basis for relief sought herein include, but are not limited to, Sections 1125 and 1129 of the Bankruptcy Code, and Bankruptcy Rules 3016, 3017, and 3020.

# II.
# STATEMENT OF PERTINENT FACTS

3. On June 17, 2013 Debtor filed *Debtor's First Amended Plan of Reorganization* [ECF No. 94] (as amended by the *Amendment to Debtor's First Amended Plan of Reorganization* [ECF No. 104], the "Plan"). Debtor filed concurrently with its Plan the *Disclosure Statement to Accompany Debtor's First Amended Plan of Reorganization* [ECF No. 95] (as amended by the *Amendment to Disclosure Statement to Accompany Debtor's First Amended Plan of Reorganization, as Amended* [ECF No. 105], the "Disclosure Statement"). The Court conditionally approved the Disclosure Statement on June 20, 2013 [ECF No.110].

4. On April 11, 2013, Debtor and its primary secured creditor, American AgCredit, participated in a settlement conference with the Honorable Gregg Zive in an attempt to reach a consensual plan of reorganization for the Debtor. Although the parties did not reach a final resolution at the settlement conference, they ultimately reached a settlement agreement, which agreement was subsequently approved by this court by Order approving Settlement with

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

2

American AgCredit pursuant to Fed. R. Bankr. P. 9019. [ECF No. 123]. It is this settlement agreement which forms the basis for the consensual treatment of American AgCredit's claims set forth in the Plan. The Plan is the culmination of extensive compromise and is the product of arm's-length and good faith negotiations.

5. American AgCredit is the holder of the Classes 1, 2, 3 and 4 Claims, which are various secured claims against Debtor's real and personal property. Pursuant to the Plan, both the Class 1 and Class 2 Claims are restructured, with new amortization schedules, interest rates and maturities as set forth in the Plan. The Class 3 and Class 4 Claims are to be paid in full within thirty (30) days of the Effective Date as set forth in the Plan.

6. The Plan provides for the payment in full of all Allowed Administrative Claims, Class 5 Other Secured Claims and Class 6 Priority Claims. As can be seen from the Debtor's monthly operating report for the month ending June 30, 2013, the Debtor's cash and cash equivalents was approximately $454,365.00. See ECF No. 129.

7. The Plan provides for payment on a monthly basis to all allowed Class 7 General Unsecured Claims in the amount of $3,000 until all such Allowed General Unsecured Claims are paid in full. Except to the extent that a Creditor with an Allowed General Unsecured Claim agrees to less favorable treatment, the Creditors with Allowed General Unsecured Claims in Class 7 shall share in such monthly payments on a Pro Rata basis based on the values of their Allowed General Unsecured Claims.

8. Class 8 is comprised of Related Party Secured Claims. The Plan provides that such Claims will be paid interest only payments so long as there is sufficient cash flow from operations to otherwise fund all other payments required under the Plan; provided, however, that if there is insufficient cash flow to make such payments, Debtor shall not be in default and the interest shall accrue until maturity.

9. The Plan provides that on the Effective Date, Class 9 Equity Security Holders will retain all of their legal interests in the Debtor.

10. The Disclosure Statement Order set a Voting Deadline of July 22, 2013, at 5:00 p.m. PST. The Debtor served on the Holders of the Class 1, 2, 3, & 4 American AgCredit

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

3

Claims, Class 7 General Unsecured Claims, and Class 8 Related Party Secured Claims the following: (a) the Disclosure Statement Order; (b) the Confirmation Hearing Notice; and (c) the applicable Ballot, together with a copy of the Disclosure Statement, to which a copy of the Plan was attached. Classes 1, 2, 3, 4 and 7 submitted their votes by the Voting Deadline and voted to accept the Plan. Class 8 votes were received after the Voting Deadline. A summary of the ballots received by Debtor is contained in the *Certification of Acceptance and Rejection of Debtor's Plan of Reorganization (Ballot Summary)* [ECF No. 131].

### III.
### LEGAL ANALYSIS

**A.    The Burden Of Proof For Plan Confirmation Is A Preponderance Of The Evidence.**

To obtain confirmation of the Plan on contested issues, the Debtor must demonstrate that the Plan satisfies the various provisions of Section 1129 by a preponderance of the evidence. See Liberty Nat'l Enterps. v. Ambanc La Mesa Ltd. P'ship (In re Ambanc La Mesa Ltd. P'ship), 115 F.3d 650, 653 (9th Cir. 1997). An analysis of each one of the requirements for plan confirmation under Section 1129(a) follows.

**B.    Section 1129(a)(1): Plan Compliance With The Bankruptcy Code.**

Section 1129(a)(1) requires that a plan must "[c]omply with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(1). This provision encompasses the requirements of Sections 1122 and 1123 governing classification of claims and contents of plans, respectively. See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); Collier On Bankruptcy § 1129.02[1] (16th ed.).

**1.    Section 1122: Classification Of Claims.**

Section 1122(a) provides, in pertinent part, that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Section 1122(a) does not require, however, that similar claims be placed in the same class. See Montclair Retail Ctr., L.P. v. Bank of the West (In re Montclair Retail Ctr., L.P.), 177 B.R. 663, 665 (B.A.P. 9th Cir. 1995).

The plan proponent has broad discretion in classifying claims under Section 1122, and a

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

4

plan may place "substantially similar claims in different classes when a reasonable nondiscriminatory basis exists" for such classification. See State St. Bank & Trust Co. v. Elmwood, Inc. (In re Elmwood, Inc.), 182 B.R. 845, 849 (D. Nev. 1995); Montclair Retail Ctr., 177 B.R. at 665. In doing so, the Court must evaluate the kind, species, or character of each category of claims and, if a plan classifies substantially similar claims in different classes, that a reasonable, non-discriminatory basis exists for such treatment, such as a business or economic justification for the separate classification or a legal distinction between the claims. See In re Elmwood, Inc., 182 B.R. at 849; Montclair Retail Ctr., 177 B.R. at 665 (citing Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage, Inc.), 166 B.R. 892, 898 (B.A.P. 9th Cir. 1994)).

### 2. The Plan Satisfies Section 1122.

The Plan properly classifies all Claims and Equity Interests in nine (9) separate Classes based on the "kind, species, or character of each category of claims." See In re Elmwood, Inc., 182 B.R. at 849. Only substantially similar Claims and Equity Interests have been placed in each Class. Classes 1 through 4 are comprised of the American AgCredit Claims, which are secured by Liens upon the Debtor's property, and deemed Allowed under the Plan. Classes 1 through 4 are impaired and are entitled to vote, and have voted to accept the Plan. Class 5 is comprised of all other Secured Claims against the Debtor. Such claims, if any, are unimpaired and not entitled to vote. Class 6 is comprised of Priority Claims. Such claims, if any, are unimpaired and not entitled to vote. The General Unsecured Claims, consisting primarily of trade creditors, are classified in Class 7. Class 7 is impaired and is entitled to vote, and has voted to accept the Plan. Class 8 Related Party Secured Claims is impaired and is entitled to vote, and has voted. Finally, Holders of Equity Securities comprise Class 9. The Debtor's classification of Claims and Equity Interests is thus reasonable and non-discriminatory. As such, the Plan complies with Section 1122.

### 3. Section 1123(a): The Plan Satisfies The Mandatory Plan Requirements.

The Plan also satisfies Section 1123(a)'s seven (7) requirements. First, the Plan classifies all Claims and Equity Interests as required by Section 1123(a)(1). See Plan § 3.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

5

Second and third, the Plan specifies which Classes of Claims are Impaired, and the treatment of each Impaired Class as required by Sections 1123(a)(2) and (3), respectively. See Plan §§ 3, 4, and 5.

Fourth, the treatment of each Claim and Equity Interest in each particular Class of the Plan is the same as the treatment for each other Claim or Equity Interest in such Class as required by Section 1123(a)(4). See Plan §§ 4 and 5.

Fifth, as more fully set forth in Section 5 of the Plan, the Plan provides adequate means for its implementation as required by Section 1123(a)(5) through: (i) the continued existence of Reorganized Debtor and the vesting of Debtor's Assets in Reorganized Debtor; (ii) the continued effectiveness of the Loan Documents as amended by the Plan; and (iii) the continuation of post-Effective Date management and operations. See Plan § 5;

Sixth, Section 1123(a)(6), which requires a prohibition in the charter of a debtor against issuance of non-voting equity securities, is satisfied because as of the Effective Date, the articles of organization, by-laws, or other organizational documents of Debtor shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Code, and shall include, among other things, a provision prohibiting the issuance of non-voting equity securities. See Plan § 5.4.

Seventh, Section 1123(a)(7), which requires that provisions concerning the manner of selection of officers, directors, or trustees under the Plan to be consistent with the interests of Creditors, Equity Interest Holders, and with public policy, is met because on and after the Effective Date, Debtor will continue to be managed by Debtor's pre-petition managers, which management may subsequently be modified to the extent provided by Reorganized Debtor's articles of organization, by-laws, and operating agreement (as amended, supplemented, or modified). See § 5.5.

Based on the foregoing, the Plan satisfies the mandatory requirements of Section 1123(a) applicable to corporations and limited liability companies.

. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

6

C. **Section 1129(a)(2):  Proponent Compliance With The Bankruptcy Code.**

Section 1129(a)(2) requires a plan proponent to "compl[y] with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1129(a)(2).  Section 1129(a)(2) is intended to encompass the disclosure and solicitation requirements under Section 1125.  See H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978); In re Trans World Airlines, Inc., 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995).

The determination of adequate information for disclosure statement purposes is made on a case-by-case basis.  See Computer Task Group, Inc. v. Brotby (In re Brotby), 303 B.R. 177, 193 (B.A.P. 9th Cir. 2003) (citing In re Texas Extrusion Corp., 844 F.2d 1142, 1157 (5th Cir. 1988)).  Case law has developed a non-exhaustive list of criteria that may be considered in evaluating the sufficiency or the adequacy of a proposed disclosure statement.  See In re Metrocraft Pub. Servs., Inc., 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984); In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (using a similar list).

The Court has previously conditionally approved Debtor's Disclosure Statement.[ECF # 56].  No creditor has objected that the Disclosure Statement and Plan fail to provide adequate information pursuant to Section 1125.  As such, Debtor submits that the Plan satisfies Section 1129(a)(2).

D. **Section 1129(a)(3):  Good Faith.**

Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  Section 1129(a)(3) does not define "good faith." Platinum Capital, Inc. v. Sylmar Plaza, L.P. (In re Sylmar Plaza, L.P.), 314 F.3d 1070, 1074 (9th Cir. 2002).  "A plan is proposed in good faith where it achieves a result consistent with the objectives and purposes of the Code."  Id. (citing Ryan v. Loui (In re Corey), 892 F.2d 829, 835 (9th Cir. 1989)); In re Trans Max Techs., 349 B.R. 80, 88 (Bankr. D. Nev. 2006); In re Sagewood Manor Assocs. Ltd. P'ship, 223 B.R. 756, 761-62 (Bankr. D. Nev. 1998).

The good faith determination pursuant to Section 1129(a)(3) is based on the "totality of the circumstances."  See Sylmar Plaza, L.P., 314 F.3d at 1074.  "[B]ankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

7

1 features of each . . . plan." Id. at 1075.

2 As noted by this Court in Sagewood, the objectives and purposes of the Bankruptcy Code, and Chapter 11 reorganization in particular, have been described by the United States Supreme Court as follows: "to revive the debtors' businesses and thereby preserve jobs and protect investors" and "to maximize the value of the bankruptcy estate," Toibb v. Radloff, 501 U.S. 157, 163 (1991), "to permit the successful rehabilitation of debtors," N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 527 (1984), and "to provide jobs, to satisfy creditors' claims, and to produce a return for [debtor's] owners," United States v. Whiting Pools, Inc., 462 U.S. 198, 203 (1983). See Sagewood, 223 B.R. at 762.

The second prong of Section 1129(a)(3) requires that the Plan "not be proposed by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The term "law" as used in this section, includes state law, and applies not to the substantive provision of a plan itself but rather to the means employed in proposing a plan. See In re Food City, Inc., 110 B.R. 808, 810-815 (Bankr. W.D. Tex. 1990).

As has been discussed at length in the pleadings and declarations filed to date in this Chapter 11 Case, as well as the representations made to the Court on the record, the Plan is the culmination of extensive compromise and is the product of arm's-length and good faith negotiations. The Plan provides fundamental fairness to all Creditors and has been proposed in good faith. Moreover, to date, no party has formally or informally expressed an objection to confirmation of the Plan based upon it being proposed in a manner contrary to the good faith requirement or by means forbidden by law. To the extent that a formal objection is not raised prior to confirmation, the Court determines this issue per Bankruptcy Rule 3020(b)(2). See Fed. R. Bankr. P. 3020(b)(2) ("If no objection is timely made, the court may determine that the plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on such issues."). Accordingly, the Plan satisfies Section 1129(a)(3).

**E.     Section 1129(a)(4): Payment For Services Rendered.**

Section 1129(a)(4) requires that "[a]ny payment made or to be made by the proponent, by the debtor, . . . for services or for costs and expenses in or in connection with the case, or in

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

8

connection with the plan and incident to the case, has been approved by, or is subject to approval of, the court as reasonable." 11 U.S.C. § 1129(a)(4). Section 1129(a)(4) requires that all payments of professional fees made from estate assets be subject to review and approval by the court as to their reasonableness. See In re River Vill. Assocs., 161 B.R. 127, 141 (Bankr. E.D. Pa .1993), aff'd, 181 B.R. 795 (E.D. Pa. 1995).

The Debtor will obtain Court approval prior to the payment of any pre-confirmation charges of professionals or other such administrative expenses that require prior Court approval. There is sufficient cash on hand to pay all anticipated administrative expenses.

The Court's review and ultimate determination of the fees and expenses to be paid by the Debtor satisfies the objectives of Section 1129(a)(4). See In re Elsinore Shore Assocs., 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that the requirements of Section 1129(a)(4) were satisfied where the plan provided for payment of only "allowed" administrative expenses). As a result, the Plan satisfies Section 1129(a)(4).

**F.     Section 1129(a)(5):  Disclosure Of Management And Insiders.**

Section 1129(a)(5) provides that a plan of reorganization may be confirmed only if the proponent of the plan discloses the identity and compensation of those individuals who will serve as management or as voting trustee of the reorganized debtor or other successor to the debtor under the plan, and their affiliations. See 11 U.S.C. § 1129(a)(5). Pursuant to Section 1129(a)(5), Section 5.5 of the Plan provides that "[f]rom and after the Effective Date, Reorganized Debtor will continue to be managed by Debtor's pre-petition managers, which management may subsequently be modified to the extent provided by Reorganized Debtor's articles of organization, by-laws, and operating agreement (as amended, supplemented, or modified)."

**G.     Section 1129(a)(6):  Regulatory Approvals.**

Section 1129(a)(6) is inapplicable in the instant case because the Debtor does not charge rates that are regulated by a governmental agency.

**H.     Section 1129(a)(7):  Best Interests Test.**

Section 1129(a)(7) requires that a plan be in the best interests of creditors and interest

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

9

holders, and specifically that each holder of an impaired claim has either accepted the plan, or "will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date."  11 U.S.C. § 1129(a)(7)(A)(i) and (ii).

In order to satisfy the "best interest test," the court must find that each dissenting creditor will receive or retain value, as of the effective date of the plan, that is not less than the amount it would receive if the debtor were liquidated.  See Drexel Burnham Lambert Group, Inc., 138 B.R. 723, 761 (Bankr. S.D.N.Y. 1992) (citing In re Victory Constr. Co., Inc., 42 B.R. 145, 151 (Bankr. C.D. Cal. 1984)).

As described by Judge Klein:

> [a]pplying the "best interests" test requires the court to conjure up a hypothetical chapter 7 liquidation that would be conducted on the effective date of the plan.  The hypothetical liquidation entails a considerable degree of speculation about a situation that will not occur unless the case is actually converted to chapter 7.  It contemplates valuation according to the depressed prices that one typically receives in distress sales.  It requires estimation of disputed and contingent claims and of chapter 7 administrative expenses.  And it requires application of the chapter 7 distribution scheme, taking into account such matters as subordinations (11 U.S.C. § 510) and recoveries from general partners (11 U.S.C. § 723) that would be applied in a chapter 7 liquidation.

In re Sierra-Cal, 210 B.R. 168, 172 (Bankr. E.D. Cal. 1997) (emphasis added) (internal citations omitted).

A bankruptcy court must make specific findings to determine whether each claim holder in the impaired classes would receive no less under a proposed plan than they would have received in a Chapter 7 proceeding.  See Ambanc La Mesa Ltd. P'ship, 115 F.3d at 657; Bell Rd. Inv. Co. v. M. Long Arabians (In Re M. Long Arabians), 103 B.R. 211 (B.A.P. 9th Cir. 1989).

Here, as exemplified by the Debtor's Liquidation Analyses, confirmation of the Plan provides Creditors and Holders of Equity Interests not less than would be received in a Chapter 7 liquidation.  See Disclosure Statement, at Exhibit "3."  In liquidation under Chapter 7, the

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

10

recoveries for each of the Classes would vary, but would not exceed the projected recoveries under the Plan. Indeed, under the Plan, Holders of Allowed Claims in Class 7 (General Unsecured Claims) are anticipated to be paid in full, but in any event will not be receiving less than they would receive in a Chapter 7 liquidation, and Class 9 Equity Securities will retain their intersts. Accordingly, the Plan satisfies the best interest test set forth in Section 1129(a)(7).

**I.      Section 1129(a)(8):  Class Acceptance.**

Section 1129(a)(8) requires that each class of claims and interests either has accepted a plan or is not impaired under a plan. See 11 U.S.C. § 1129(a)(8). Whether a class of claims is impaired is governed by Section 1124. See 11 U.S.C. § 1124. Whether a class of claims has accepted a plan is determined by reference to Section 1126. See 11 U.S.C. § 1126.

Classes 6, 7 and 9 are unimpaired and thus deemed to have accepted the Plan pursuant to Section 1126(f). See 11 U.S.C. § 1126(f) ("Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.").

The Impaired Classes entitled to vote on the Plan are Classes 1 through 4 American AgCredit Claims, Class 7 General Unsecured Claims, and Class 8 Related Party Claims. As set forth above, all Classes have voted to accept the Plan.

**J.      Section 1129(a)(9): Priority Claims.**

Section 1129(a)(9) encompasses several requirements concerning the payment of unsecured claims entitled to priority distribution pursuant to Section 507(a). See 11 U.S.C. § 1129(a)(9).

Pursuant to the Plan, all Allowed Priority Claims in Class 6 will be paid in full. Further, in accordance with Sections 1129(a)(9)(A) and (B), Section 2.2 of the Plan provides for the payment in full of each holder of an Allowed Administrative Claim. Pursuant to Section 2.2.1 of the Plan, all requests for payment of Administrative Claims against the Debtor and all final applications for allowance and disbursement of Professional Fees must be filed by the Administrative Claims Bar Date. As such, the Plan satisfies the requirements of Section

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

11

1129(a)(9).

**K.     Section 1129(a)(10):  One Consenting Impaired Class.**

Section 1129(a)(10) requires that "[i]f a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by an insider." 11 U.S.C. § 1129(a)(10). In the case at hand, all Classes that were entitled to vote on the Plan, have voted to accept the Plan. Thus, Section 1129(a)(10) has been satisfied herein.

**L.     Section 1129(a)(11):  Feasibility.**

Section 1129(a)(11) requires that a proposed plan be feasible. Specifically, the Debtor must establish that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. § 1129(a)(11).

"The purpose of section 1129(a)(11) is to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." Pizza of Haw., Inc. v. Shakey's, Inc. (In re Pizza of Haw., Inc.), 761 F.2d 1374, 1382 (9th Cir. 1985); In re Trans Max Techs., 349 B.R. 80, 91 (Bankr. D. Nev. 2006).

This Court has explained the feasibility test as follows:

> The feasibility test set forth in § 1129(a)(11) requires the court to scrutinize the plan to determine whether it offers a reasonable prospect of success and is workable. The debtor must present ample evidence to demonstrate that the plan has a reasonable probability of success. Success need not be guaranteed. The mere potential for failure of the plan or the prospect of financial uncertainty is insufficient to disprove feasibility.
>
> While a reviewing court must examine the totality of the circumstances in order to determine whether the plan fulfills the requirements of § 1129(a)(11), only a relatively low threshold of proof is necessary to satisfy the feasibility requirement. The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan of reorganization can be performed. However, where the financial realities do not accord with the proponent's projections or where the projections are unreasonable, the plan should not be confirmed.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

* * *

> Feasibility is established through expert testimony and those knowledgeable of the future prospects of the reorganized debtor. The inquiry is on the viability of the reorganized debtor, and its ability to meet its future obligations, both as provided for in the plan and as may be incurred in operations. In this respect, section 1129(a)(11) requires the plan proponent to show concrete evidence of a sufficient cash flow to fund and maintain both its operations and obligations under the plan.
>
> The traditional factors which have evolved to aid the bankruptcy court in a feasibility analysis include: (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. . . . This list of factors is neither exhaustive nor exclusive.

Sagewood Manor Assocs. Ltd. P'ship, 223 B.R. at 762-63 (citations and quotations omitted); see also Trans Max Techs., 349 B.R. at 92 (referencing the same six feasibility factors and noting that "[t]he Code does not require the debtor to prove that success is inevitable, . . . and a relatively low threshold of proof will satisfy § 1129(a)(11).") (citing Computer Task Group, Inc. v. Brotby (In re Brotby), 303 B.R. 177, 191 (B.A.P. 9th Cir. 2003)); Acequia, Inc. v. Clinton (In re Acequia, Inc.), 787 F.2d 1352, 1364 (9th Cir. 1986) (affirming plan confirmation over feasibility objection and stating that the debtor presented evidence to demonstrate that the proposed plan "has a reasonable probability of success," thereby satisfying the feasibility test).

Debtor is presently generating sufficient revenue to satisfy all of its operating expenses and debt service obligations under its Plan. As can be seen from the Debtor's monthly operating report for the month ending June 30, 2013, the Debtor's cash and cash equivalents was approximately $454,365.00. See ECF No. 129. Debtor's ongoing operations generate sufficient cash flow to meet its payment obligations under the Plan. As demonstrated by the Projections attached to the Disclosure Statement as Exhibit 2, Debtor will be able to satisfy its obligations under the Plan, and as a result of reduction of the balances of the Class 1 and Class 2 Claims by their Maturity Dates, Debtor will have no difficulty refinancing those mortgages at then current

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

13

1  market terms.  As such, the Debtor has demonstrated that it is capable of meeting all Cash demands under the Plan, and that the Plan is otherwise feasible.

### M. Section 1129(a)(12):  U.S. Trustee's Fees Paid.

Section 1129(a)(12) requires that all fees payable under 28 U.S.C. § 1930, as determined by the Court at the confirmation hearing, be paid or provided for in the Plan.  In the instant case, all fees payable pursuant to 28 U.S.C. § 1930 will be paid pursuant to Section 12.15 of the Plan.  As such, the Plan satisfies Section 1129(a)(12).

### N. Section 1129(a)(13) Through (a)(16):  Miscellaneous Inapplicable Provisions.

There are no retiree benefits, as that term is defined in Section 1114, in controversy in this case, and thus Section 1129(a)(13) is inapplicable.  Second, the Debtor is not required or obligated on any domestic support obligation, and thus Section 1129(a)(14) is inapplicable.  Third, the Debtor is not an individual, and thus Section 1129(a)(15) is inapplicable.  Fourth, the Debtor is a moneyed, business, and commercial corporation, not an eleemosynary organization, and thus Section 1129(a)(16) is inapplicable.

### O. If Necessary, Non-Material Plan Modifications Are Permitted.

Section 1127(a) allows for plan modifications and Bankruptcy Rule 3019(a) establishes the procedural requirements for plan modifications pre-confirmation.  See 11 U.S.C. § 1127(a); Fed. R. Bankr. P. 3019(a).  Plan modifications do not require a new disclosure statement and court approval unless the modifications are material.  See In re Simplot, 2007 WL 2479664, at *11 (Bankr. D. Idaho 2007) (citing In re Downtown Inv. Club III, 89 B.R. 59, 65 (B.A.P. 9th Cir. 1988)).  The word "material" in this context has been described as "so affect[ing] a creditor or interest holder who accepted the plan that such entity, if it knew of the modification, would be likely to reconsider its acceptance."  Id. (quoting In re Am. Solar King Corp., 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988)).  To the extent any Plan modifications are needed, they will not be material, such that they would cause a Creditor who voted to accept the Plan to reconsider its acceptance.

. . .

. . .

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

103126-002/2001384_2

14